UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Crim. No. 08-322 (DSD/SRN) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Arthur James Griffin (02), | |
| Defendant. | |

Thomas M. Hollenhorst, United States Attorney's Office, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415, for Plaintiff United States of America

Kassius O. Benson, Law Office of Kassius O. Benson, PA, 2915 Wayzata Boulevard, Suite 101, Minneapolis, Minnesota 55405, for Defendant Arthur James Griffin

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-captioned case comes before the undersigned United States Magistrate Judge on Defendant Arthur James Griffin's Motion to Suppress Statement (Doc. No. 29).[1] Defendant Griffin seeks to suppress a statement he made to law enforcement officers on September 30, 2008. The motion was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. The Court recommends that the motion be denied.

I.   FACTS

On September 30, 2008, Defendants Michael Allen Barthel, Antonio Ortiz Shinaul, and Arthur James Griffin drove to a Walmart parking lot in West Saint Paul, Minnesota, to purchase

---

[1] By Order dated December 8, 2008, the Honorable David S. Doty, United States District Court, granted leave to Defendant Griffin to have his previously withdrawn motion to suppress heard by this Court.

three kilograms of cocaine from an undercover officer. Law enforcement officers had arranged the transaction by using cooperating informants to make several recorded telephone calls to Barthel. Investigating officers first became aware of Defendant Griffin's involvement when he arrived at the Walmart parking lot with Barthel and Shinaul.

When the three men met with the undercover officer, one of them showed the officer a bag of money containing $70,000. The officer then gave them one kilogram of real cocaine and two kilograms of sham cocaine. A signal was given to arrest the perpetrators, and Defendant Griffin ran from the scene with his hands in the front of his jacket. Officers gave chase, caught him, and recovered the bag of money from his jacket. Defendant was arrested and transported to the West Saint Paul Police Department.

Approximately an hour later, at 10:00 p.m., Drug Enforcement Administration Special Agents Lora Zimmer and Terry Olstad interviewed Defendant Griffin at the police station. They explained who they were and showed Defendant Griffin their identification cards. Agent Olstad read Defendant Griffin his <u>Miranda</u> rights verbatim from a standard-issue card. (Gov't Ex. 1.) When asked if he understood his rights, Defendant said he did. Defendant also said he was willing to talk to the agents. The agents did not give Defendant a written waiver form, and the interview was not recorded. The interview lasted approximately fifteen to twenty minutes. Defendant Griffin was cooperative and appeared to understand the agents' questions, although he was somewhat agitated. He told the agents he had a cold and had taken Nyquil earlier in the day. He did not appear to be under the influence of any drugs or alcohol. The agents did not ask Defendant Griffin if he was under the influence because he appeared to be sober and to understand the situation. He never asked for an attorney.

Defendant Griffin told the agents he was unemployed but attending college. He

explained that he had agreed to ride with Shinaul to the Walmart, but he was not aware of the bag of money until it was shown to the undercover officer. He said he tried to steal the money to support his children.

## II.    DISCUSSION

Defendant seeks to suppress the statement he made on September 30, 2008, on the ground that his waiver of Miranda rights was invalid. He challenges particularly the agents' failure to use a written waiver form.

A law enforcement officer must advise a person of his Miranda rights before interrogating that person in a custodial setting. Illinois v. Perkins, 496 U.S. 292, 297 (1992). The person may choose to waive his rights and speak with the officer, but the waiver must be "made voluntarily, knowingly, and intelligently" for the statement to be admissible in court. Miranda v. Arizona, 384 U.S. 436, 444 (1966).

All of the evidence before the Court indicates that Defendant Griffin's waiver was voluntary, knowing, and intelligent. Defendant Griffin understood his rights and agreed to speak with the agents. He was cooperative, and he never asked to speak with a lawyer. He did not appear to be under the influence of drugs or alcohol. Although he said he had a cold for which he had taken Nyquil earlier that day, there is no evidence that either the cold or the medicine affected his ability to knowingly, voluntarily, and intelligently waive his rights.

As to Defendant Griffin's argument that the police should have obtained a written waiver, the Eighth Circuit Court of Appeals has expressly declined to impose such a requirement because it is not constitutionally required. United States v. Williams, 429 F.3d 767, 772 (8th Cir.

2005) (citations omitted). Accordingly, in light of all the circumstances surrounding the waiver, Defendant Griffin's statement should not be suppressed.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Arthur James Griffin's Motion to Suppress Statement (Doc. No. 29) be **DENIED**.

Dated: December 17, 2008

 s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **January 2, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.